*638 TEXTO COMPLETO DE LA SENTENCIA
El Comité Municipal del Partido Nuevo Progresista (PNP) de Orocovis, comparece en los recursos de epígrafe a solicitarnos que revisemos y revoquemos dos resoluciones emitidas por la Sala Superior de Aibonito del Tribunal de Primera Instancia (TPI) el 31 de octubre de 2008, en las que se pronunció no ha lugar a la revisión de ciertas decisiones de la Comisión Local de Elecciones del Precinto 66 de Orocovis.
El recurso KLCE-2008-01585 fue radicado en la Secretaría de este Tribunal el 31 de octubre de 2008 a las 5:02 de la tarde. El recurso KLCE-2008-01586 fue radicado en esa misma fecha a las 5:03 de la tarde.
En resolución emitida ese mismo día ordenamos a la parte recurrida presentar su escrito de oposición en o antes de las 12:00 del medio día de hoy, 1 de noviembre de 2008.
En el día de hoy comparecieron el Partido Popular Democrático (PPD), en evidente representación del Comisionado Local de Elecciones de dicho partido en el Precinto 66 de Orocovis, así como el Comisionado Electoral del Partido Nuevo Progresista, en apoyo a las peticiones de certiorari presentadas. Posteriormente compareció el peticionario con un escrito de réplica a la oposición del PPD a la expedición de los autos.
Con el beneficio de los escritos de todos los comparecientes, procedemos a disponer de los recursos.
I
De los expedientes sometidos a nuestra consideración se desprenden los siguientes hechos e incidentes procesales y administrativos pertinentes a las controversias planteadas.
A
Recurso KLCE-2008-01585
El 28 de junio de 2008, el Partido Popular Democrático (PPD) compareció ante el TPI a solicitar la revisión *639 de una determinación del Presidente de la Comisión Local de Elecciones del Precinto 66 de Orocovis (Comisión Local). Planteó que incidió el Presidente de la Comisión Local al no adjudicar ciertas “Recusaciones por Domicilio” presentadas, al concluir que la publicación de los edictos autorizados para notificar a los electores afectados había sido inadecuada. Esbozó el recurrente que la publicación tardía de los edictos había obedecido “a falta de espacio en el periódico”, lo que no le era atribuible al PPD como promovente de la recusación, por lo que había justa causa para ordenar una nueva publicación, de conformidad con la Sección 2.12 del Reglamento para el Trámite de Recusaciones, aprobado por la Comisión Estatal de Elecciones (C.E.E.) el 13 de noviembre de 2007, infra.
Cumpliendo con el Artículo 1.016 de la Ley Electoral de Puerto Rico (en adelante Ley Electoral), 16 L.P.R. A. sec. 3016a, el TPI celebró la vista de rigor. Aquilatada la prueba presentada por las partes, dicho foro determinó que existía justa causa para el incumplimiento en cuanto a la publicación de los edictos y ordenó que fueran nuevamente publicados. El peticionario recurrió a este Tribunal de Apelaciones, el que revocó la decisión del TPI. Elevado el asunto al Tribunal Supremo, el más Alto Foro revocó al Tribunal de Apelaciones y confirmó el dictamen del TPI. Así se ordenó que los edictos fueran publicados nuevamente, para lo que se concedió un término de tres días. PPD y otros v. Comisión Local de Elecciones, Precinto 66 de Orocovis y otros, 175 D.P.R. _ (2008), 2008 J.T.S. 185.
El 16 de octubre de 2008, el PPD publicó los edictos que le fueron autorizados, luego de lo cual la Comisión Local celebró vistas el 24 de octubre de 2008 para dilucidar las recusaciones en cuestión. Surge de los autos que de 78 recusaciones presentadas, 29 fueron desistidas, 49 fueron declaradas con lugar y 3 fueron declaradas sin lugar. [1]
Es de estas decisiones que el peticionario instó el 27 de octubre de 2008 recurso de revisión ante el TPI¡ alegando que la publicación de los edictos había sido tardía y que no cumplió con los requisitos de forma establecidos por ley y reglamento. Así, imputó error a la Comisión Local al ordenar la exclusión de los electores cuyas recusaciones fueron declaradas con lugar. Planteó que en las vistas ante la Comisión Local no se presentó prueba robusta, clara y convincente para sostener dichas recusaciones.
El 30 de octubre de 2008, el TPI señaló la vista dispuesta en el Artículo 1.016 de la Ley Electoral, supra. A dicha vista compareció el peticionario, representado por sus abogados, y el PPD, representado por el Comisionado Local de Elecciones (Comisionado Local) de dicho partido en la Comisión Local del Precinto 66 de Orocovis.
El peticionario planteó que la exclusión del Registro de Electores de los electores cuyas recusaciones fueron declaradas con lugar se había efectuado violentando el debido proceso de ley, porque tenían el efecto de privarlos de su derecho al voto, ya que el Registro Electoral había sido cerrado y no tendrían entonces la oportunidad de registrarse en los precintos donde les correspondiera hacerlo.
Durante la vista, el Comisionado Local del PPD expuso las razones que mediaron para la publicación tardía de los primeros edictos ordenados, atribuyéndolas “al paso del Huracán Ornar”. [2] En cuanto al cuestionamiento del peticionario de que en las decisiones de la Comisión Local, declarando con lugar las recusaciones, la Presidenta de ésta no expuso las razones y motivos para sostener la recusación, atestó que ello obedecía a que había una estipulación o acuerdo entre los Comisionados Locales de ambos partidos, PNP y PPD, para que se sostuvieran ciertas recusaciones y se desistiera de otras. Argüyó que por dicha razón no se presentó prueba a la Presidenta de la Comisión Local sobre los méritos de las recusaciones.
Escuchadas las partes, el 31 de octubre de 2008, el TPI dictó la resolución de la cual se recurre, denegando la revisión de dicha resolución.
*640 KLCE-2008-01586
En este recurso se alude a 66 recusaciones presentadas por el Comisionado Local del PPD que tuvieron un trámite administrativo esencialmente similar a las recusaciones a que se refiere el recurso anterior.
Una vez que el Tribunal Supremo dictaminó que los primeros edictos cuestionados por el peticionario fueran publicados nuevamente, en cuanto a estas 66 recusaciones, el 20 de octubre de 2008, el PPD publicó los mismos.
Para atender estas 66 recusaciones, la Comisión Local celebró vistas el 25 de octubre de 2008. Se desprende de los autos que de las 66 recusaciones por domicilio, 29 fueron desistidas, 19 declaradas con lugar, 1 sin lugar, y en 3 de ellas se ordenaron transferencias. [3]
Es de estas decisiones de la Comisión Local que el peticionario también instó el 27 de octubre de 2008 recurso de revisión ante el TPI, alegando que la publicación de los edictos había sido tardía y que no se había cumplido con los requisitos de forma establecidos en la ley y en el reglamento. Igualmente imputó error a la Comisión Local al también ordenar la exclusión de estos electores.
Para atender la revisión solicitada, el TPI también señaló vista para el 30 de octubre de 2008. A esta vista compareció el peticionario, representado por sus abogados, y también el Comisionado Local del PPD del Precinto 66 de Orocovis.
En la vista ante el TPI, las partes reprodujeron los mismos planteamientos y argumentos que expusieron en torno a los incidentes pertinentes a las 78 recusaciones presentadas contra otros electores en iguales circunstancias, como se desprende del expediente correspondiente al recurso KLCE-2008-01585.
II
En el recurso KLCE-2008-01585, el peticionario presenta los siguientes señalamientos de errores:
A

“Erró el Tribunal de Primera Instancia al permitir y justificar la exclusión de electores, a pesar que no se cumplió con la sec. 3.1 del Reglamento para el trámite de recusaciones.

Erró el Tribunal de Primera Instancia a no ordenar la apertura del registro de inscripción, en detrimento del debido proceso de ley sustantivo de los electores.”

i
Sobre este primer error argumenta el peticionario que de acuerdo a la sección 3.1 del Reglamento para el Trámite de Recusaciones, la Decisión de la Comisión Local, declarando con lugar una recusación, debe especificar los fundamentos de hechos y de derecho en que se basa, así como la razón para la exclusión. Sostiene que en ninguna de las decisiones tomadas por la Comisión Local en las recusaciones que se cuestionan se consignan fundamentos de hecho y de derecho.
Plantea, además, que la conclusión a que llegó el TPI en cuanto a que la decisión de ordenar la exclusión de estos electores fue producto de un acuerdo entre los Comisionados Locales del PPD y del PNP, no puede colegirse en forma alguna del texto de las decisiones. Realiza la siguiente interrogante: Si hubo tal acuerdo, por qué en el formulario de la decisión en estas recusaciones no se menciona el mismo. [4]
El PPD sostiene en su oposición al certiorari que la Comisión Local cumplió adecuadamente con el *641 Reglamento para el Trámite de Recusaciones en todo lo referente a la tramitación para la publicación de los edictos.
ii
En tomo al segundo error señalado, el peticionario plantea que al momento en que se ordenan estas exclusiones, los electores recusados no tienen ningún remedio disponible para defender su derecho al voto, ya que sus nombres quedarían excluidos de las listas electorales a sólo ocho (8) días de las elecciones. De esta manera, el elector queda privado de la posibilidad de volverse a registrar dentro del término establecido en la Ley Electoral de Puerto Rico. [5]
Por su parte, el PPD arguye sobre la imposibilidad de abrir el Registro Electoral para inscribir nuevos electores a tres (3) días de las Elecciones Generales. Sostiene que el trámite de estas recusaciones se ha tardado más de lo acostumbrado debido a las múltiples apelaciones hechas por el PNP. Concluye señalando que los electores recusados son los responsables de su exclusión por no haber hecho las debidas diligencias para solicitar transferencias a los precintos donde tienen su domicilio.
B
En el recurso KLCE-2008-01586, el peticionario desglosa los siguientes señalamientos de errores:

“Erró el Tribunal de Primera Instancia al confirmar a la Comisión Local al denegar la desestimación de las recusaciones objeto del presente litigio, a pesar que se incumplió con el término de notificación por edicto según fue ordenado por el Tribunal de Instancia, así como con los requisitos deforma del Edicto.

Erró el Tribunal de Primera Instancia al permitir y justificar la exclusión de electores, a pesar que no se cumplió con la sec. 3.1 del reglamento para el trámite de recusaciones.

Erró el Tribunal de Primera Instancia a no ordenar la apertura del registro de inscripción, en detrimento del debido proceso de ley sustantivo de los electores.”

i
En cuanto al primer error señalado, el peticionario alega que el promovente de estas recusaciones no cumplió con los requisitos de naturaleza estricta que se exigen para la validez de los emplazamientos. Sostiene que los edictos no se publicaron “en letra negrilla, tamaño diez (10) puntos”. [6] También arguye que los edictos se publicaron fuera del término ordenado para ello sin que se demostrara justa causa para la dilación.
Sobre este error, el PPD plantea que medió justa causa para cualquier dilación en la publicación de los edictos debido al paso del Huracán Ornar, según lo aclara el TPI en su resolución.
ii
En tomo al segundo error también cuestiona el peticionario el hecho de que en ninguna de las decisiones emitidas por la Comisión Local, declarando con lugar las recusaciones se hace referencia a testigos examinados o pmeba documental presentada, ni se consignan las razones en que se fundamentó la orden de exclusión. Aduce, que la conclusión del TPI de que la ausencia de esas determinaciones obedeció a que las mismas fueron “producto del acuerdo de los comisionados de ambos partidos”, no se colige del texto de las decisiones; y que, además, las decisiones fueron tomadas por la presidenta de la Comisión Local, lo que ocurre en ausencia de unanimidad o acuerdo por parte de los Comisionados Locales.
El PPD insiste en que dicho error no fue cometido, porque las recusaciones impugnadas fueron el producto de un acuerdo decisional entre los Comisionados Locales del PPD y PNP, según el crédito que el TPI dio al testimonio del Comisionado Local del PPD durante la vista del recurso.
*642 iii
Finalmente, sobre el tercer error señalado, al igual que en el recurso anterior, el peticionario insiste en que al ordenar estas exclusiones los electores recusados no tienen ningún remedio disponible para defender su derecho al voto, ya que sus nombres quedarán excluidos de las listas electorales a sólo ocho (8) días de las elecciones.
A este señalamiento de error riposta el PPD con los mismos argumentos esgrimidos en el recurso anterior. O sea, que ya no es posible reinsertar a los electores recusados en el Registro Electoral, ya que éstos no hicieron oportunamente las gestiones para ser transferidos a los Precintos donde deben votar.
C
El conjunto de errores señalados en ambos recursos puede contraerse a que la controversia a resolver es si en el proceso para la recusación de estos electores se cumplió adecuadamente con la reglamentación aplicable y si la exclusión de éstos del Registro Electoral, en lo concerniente al Precinto 66 de Orocovis, se ordenó conforme a derecho.
III
Procede que examinemos la normativa constitucional, estatutaria, reglamentaria y jurisprudencial aplicable a la controversia a que nos enfrentamos.
Nuestra Constitución consagra principio de que [l]as leyes garantizaran la expresión de la voluntad del pueblo mediante el sufragio universal, igual, directo y secreto, y protegerán al ciudadano contra toda coacción en el ejercicio de la prerrogativa electoral”. Art. II, sec. 10, Const. E.L.A., L.P.R.A. Tomo 1. De esta disposición constitucional se ha reconocido que el derecho al voto es uno de los derechos fundamentales del pueblo y, como tal, es la obligación de los tribunales hacerlo observar y respetar. PPD v. Admor. Gen. de Elecciones, 111 D.P.R. 199, 221 (1981).
Para garantizar y proteger el derecho al voto, la Asamblea Legislativa aprobó la Ley Electoral Núm. 4 de 20 de diciembre de 1977, según enmendada, y conocida como la Ley Electoral de Puerto Rico, 16 L.P.R.A. see. 3001, et seq. En su Artículo 2.006, 16 L.P.R.A. see. 3056, se dispone que “[a] no ser de lo dispuesto en esta ley o de una orden emitida por un Tribunal de Justicia con competencia para ello, no se podrá, mediante regla, reglamento, orden, resolución, interpretación o en cualquier otra forma, rechazar, cancelar, invalidar o anular el registro o inscripción legal de un elector o privar a uno debidamente calificado de su derecho al voto ”.
Como parte de la protección del derecho al voto, en los Artículos 2.022 y 2.022A, 16 L.P.R.A. 3073 y 3073a, se establecen los mecanismos de recusación para eliminar a un elector del Registro Electoral y así evitar que aquellos que no tienen derecho a ser electores formen parte del mismo. En el Artículo 2.022A, supra, se establece un período de cuatro (4) meses, del 15 de enero al 15 de mayo, en que se celebren Elecciones Generales, para recusar a los electores que no tengan derecho a votar en el Precinto en que aparecen inscritos.
Para poner en vigor el procedimiento de recusación de electores fue que, el 13 de noviembre de 2007, la Comisión Estatal de Elecciones (C.E.E.) aprobó el Reglamento para el Trámite de Recusaciones (en adelante el Reglamento). De acuerdo a las disposiciones de este Reglamento, el Partido Político que interese recusar un elector debe notificarle a éste personalmente su intención de hacerlo con copia de la Solicitud de Recusación y acreditar, bajo juramento y apercibimiento de perjurio, haber realizado dicha gestión. Véase Sección 2.8 del Reglamento.
Cuando el elector no puede ser emplazado personalmente, la Sección 2.12 del Reglamento permite que se publiquen edictos con el fin de notificarle a los electores que se pretenden recusar que, a pesar de haberse realizado diligencias razonables a esos efectos, no han podido ser emplazados personalmente. Una vez que se *643 acrediten las diligencias realizadas para notificarle al elector personalmente, el Presidente de la Comisión Local puede autorizar la notificación mediante edictos. El edicto debe publicarse dentro del término de diez (10) días a partir de la fecha de la autorización. Dentro de este terminó también deberá enviársele al elector afectado la notificación y citación para la vista por correo certificado, a la última dirección de éste que surja del registro electoral.
La persona que diligencie la publicación del edicto tendrá cinco (5) días para acreditar a la Comisión Local el cumplimiento con el procedimiento, lo que de no cumplirse dentro de ese término conllevaría que se entienda por desistida la solicitud de recusación.
Cuando se acredite el cumplimiento con el procedimiento dispuesto para la publicación del edicto y la notificación al elector afectado, se celebrará la vista de recusación dentro de los diez (10) días siguientes, términos que se consideran de cumplimiento estricto. PPD y otros v. Comisión Local de Elecciones, Precinto 66 de Orocovis y otros, supra, pág. 6 de la sentencia.
El Tribunal Supremo ha enunciado que “al considerar la existencia de justa causa en el contexto de las recusaciones de electores no puede perderse de vista que se trata de un procedimiento que busca limitar, aun cuando por unas justificaciones particulares, el derecho de un elector a votar en una elección. Por ese motivo, se debe constatar fehacientemente que las razones aducidas para haber incumplido con los términos de cumplimiento estricto en los procesos de recusaciones no sean meros argumentos sin sustancia que soslayen la importancia del derecho al voto en esta jurisdicción”. PPD y otros v. Comisión Local de Elecciones, Precinto 66 de Orocovis y otros, supra, pág. 7.
Finalmente sobre el tema, debemos señalar que se ha sostenido que el elector debe tener amplia oportunidad de defender su voto, lo que en lo pertinente se traduce en que el elector cuya inscripción se impugna debe tener derecho a contradecir la recusación. PPD v. Admor. Gen. de Elecciones, supra, pág. 232. Claro está, esto no quiere decir que el elector no tenga obligaciones que cumplir para hacer valer su derecho al voto una vez se le recusa. El elector no puede cruzarse de brazos y tiene el derecho a confrontarse con el que pretende recusarlo. Id.
IV
Con el acervo jurídico anteriormente reseñado, debemos pasar juicio sobre los errores que el peticionario atribuye al TPI en las dos resoluciones de la cual recurre.
Un examen de los expedientes de los recursos sometidos a nuestra consideración nos obliga a analizar y a discutir en primer lugar el error donde se señala que durante el proceso efectuado para la recusación y exclusión del Registro Electoral de un total de 68 electores, no se cumplió con lo dispuesto en la Sección 3.1 del Reglamento.
Una minuciosa y ponderada evaluación de las resoluciones recurridas nos lleva a concluir que en las vistas celebradas por el TPI, para dilucidar la revisión de las decisiones tomadas por la Comisión Local con relación a las recusaciones en cuestión, estuvieron limitadas a escuchar los planteamientos de las partes, sin que se formalizara la presentación de prueba testifical. La única prueba que como tal surge del récord son las decisiones cuya revisión se solicitó al TPI, sobre las cuales por tratarse de prueba documental estamos en igual posición que dicho foro para aquilatarla. Alvarez de Choudens v. Rivera Vázquez, 164 D.P.R. _ (2005), 2005 J.T.S. 90; Trinidad v. Chade, 153 D.P.R. 280 (2001); Ramírez, Segal & Látimer v. Rojo Rigual, 123 D.P.R. 161 (1989).
El Reglamento dispone categóricamente en su Sección 3.1, entre otras cosas, lo siguiente:

*644
“La decisión de la Comisión Local deberá especificar los fundamentos de hechos y derecho en que se basa y la forma mediante la cual se toma la decisión. Se especificará, además, la razón de la exclusión. La decisión sobre la recusación deberá ser notificada a la Comisión, a los Comisionados Electorales, a los Comisionados Locales, al recusadory al recusado.”

Esta norma tiene su base en el estándar de prueba requerido para casos electorales, según el cual las determinaciones de hechos en estos casos deben basarse en “prueba clara, robusta y convincente”. P.P.D. v. Admor Gen. de Elecciones, supra, pág. 338. La norma tiene preeminencia cuando se trata de la negación de un derecho fundamental, como lo es el derecho al voto y como ocurre en el proceso de recusación de electores. En estos casos, el debido proceso de ley exige que el valor y suficiencia de la prueba sean medidos con un criterio más riguroso que el de preponderancia a la prueba.
A poco de examinar cada una de las decisiones tomadas por la Comisión Local para decretar la exclusión de los electores recusados, aquí en controversia, nos percatamos que en ninguna de dichas decisiones la Juez Presidente de dicha Comisión Local consignó los hechos que tomó en consideración para validar la recusación. De conformidad con el estándar de prueba antes aludido, para ordenar la exclusión de un elector del Registro Electoral tenía que recibir “prueba clara, robusta y convincente”.
La admisión de dicha prueba tenía que ser consignada en la “Decisión” de la Comisión Local en el espacio correspondiente a “razón para la decisiónInexplicablemente, la Presidenta no lo hizo. Por tanto, incumplió con el mandato de la Sección 3.1 del Reglamento. Ante esas circunstancias, la decisión carece de elementos fundamentales para su validez. [7]
Expuesto lo anterior, procede preguntarnos porqué el TPI ignoró dicha prueba documental y optó por aceptar como concluyentes las explicaciones que dio el Comisionado Local del PPD para justificar la validez de las decisiones de la Comisión Local, recusando a los electores aludidos en las resoluciones recurridas. La contestación a esa interrogante nos la ofrece el Tribunal Supremo con sus pronunciamientos en el caso de Pueblo v. Ortega Santiago, 125 D.P.R. 203, 211-212 (1990), a saber:

“El abuso de discreción se puede manifestar de varias maneras en el ámbito judicial. Se incurre en ello, entre otras y en lo pertinente, cuando el juez, en la decisión que emite, no toma en cuenta e ignora, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando por el contrario el juez, sin justificación y fundamento alguno para ello, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en el mismo; o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez livianamente sopesa y calibra los mismos. ”

Es nuestro criterio que el TPI, frente a las explicaciones que ofreció el Comisionado Local del PPD, exponiendo que las decisiones declarando con lugar las recusaciones se habían tomado por acuerdo entre él y el Comisionado del PNP, no tomó en cuenta e ignoró, sin fundamento razonable para ello, el hecho material importante de que en las decisiones consignadas por escrito nada se expresó y certificó sobre dicho acuerdo. Esto se refuerza cuando observamos que de dicha prueba documental lo que surgía era que los Comisionados Locales estaban en desacuerdo en cuanto a las recusaciones y fue la Presidenta de la Comisión Local la que tuvo que tomar la decisión. [8]
Es nuestra opinión que el TPI erró al concederle gran peso y valor a las explicaciones del Comisionado Local del PPD, las que estaban en clara contradicción con la prueba documental que evidenciaba las decisiones tomadas por la Comisión Local, para proceder entonces a basar su resolución exclusivamente en dichas explicaciones. [9]
*645 Además, nuestro más Alto Foro ha expresado que no obstante pueda haber alguna evidencia que un tribunal pueda utilizar para sostener sus conclusiones de hechos, si del examen de la totalidad de la evidencia el foro revisor o apelativo queda definitiva y firmemente convencido que un error ha sido cometido, debe rectificar dicho error, como es el caso en que las conclusiones de hechos están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida. Abudo Servera v. A.T.P.R., 105 DRP 728, 731 (1977).
En consideración a todo lo antes expuesto, procede que decretemos la revocación de las dos resoluciones recurridas, y dejemos sin efecto las órdenes de exclusión de los 68 electores que con éstas pudieron resultar afectados en el ejercicio de su derecho al voto en las próximas Elecciones Generales. Dada esta determinación es innecesario que analicemos y discutamos los demás errores señalados.
No queremos concluir sin llamar la atención al hecho de que cuando del derecho al voto se trata, los organismos rectores de nuestro proceso electoral, como lo son la C.E.E. y las Comisiones Locales, deben demostrar más celeridad y agilidad en sus procedimientos y absoluto aprecio y cumplimiento con sus propios reglamentos.
V
Por los fundamentos antes expuestos, se expiden los autos de certiorari solicitados por el peticionario en ambos recursos de epígrafe, y se revocan las resoluciones dictadas por la Sala Superior de Aibonito delTribunal de Primera Instancia en los casos civiles núms. BPE-2008-0038 y BPE-2008-0039. En consecuencia se dejan sin efecto las 68 decisiones de la Comisión Local de Elecciones del Precinto 66 de Orocovis, mediante las que se decretó la exclusión del Registro Electoral de dichos electores.
Notifíquese inmediatamente por teléfono o vía facsímil, y por la vía ordinaria.
Notifíquese también de igual forma al Presidente de la Comisión Estatal de Elecciones y a los Comisionados Electorales de los Partidos Políticos, Popular Democrático, Nuevo Progresista, Independentista Puertorriqueño y Puertorriqueños por Puerto Rico.
Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.
María E. Pérez Ortiz Secretaria del Tribunal de Apelaciones
ESCOLIOS 2009 DTA 7

1. En autos obran, además del Acta de Incidencias de la Comisión Local del Precinto 66 de Orocovis, 44 decisiones de dicha Comisión declarando con lugar la recusación de igual número de electores. Las decisiones aparecen firmadas por el Comisionado Local del PPD, votando por la exclusión del elector, y por el Comisionado Local del PNP votando para que no se excluya al elector. Suscribe finalmente cada decisión la Presidenta de la Comisión Local, Hon. Nivea Aviles Caratini.

2. Sobre este particular, en la resoluciones recurridas en estos recursos, el TPI puntualizó lo siguiente: “El 15 de octubre de 2008, por ser el día en que se emitió la Orden del tribunal, no está incluido en el cómputo, y 16 de octubre de 2008, por razones atribuibles al paso del Huracán Ornar, el Tribunal Supremo extendió todos los términos legales. Medidas Judiciales para atender emergencias causadas por el Huracán Ornar Núm. E.-2004-4. ” Véanse notas al calce a la pág. 6 de dichas resoluciones.

3. En autos obran, además del Acta de Incidencias de la Comisión Local del Precinto 66 de Orocovis, 16 decisiones de dicha Comisión declarando con lugar la recusación de igual número de electores. Las decisiones aparecen también firmadas por el Comisionado Local del PPD, votando por la exclusión del elector, y por el Comisionado Local del PNP votando para que no se excluya al elector. Suscribe finalmente cada decisión la Presidenta de la Comisión Local, Hon. Nivea Avilés Caratini.

4. Un examen de 44 decisiones, según incluidas en el Apéndice de los peticionarios, págs. 20-63, demuestra que no hubo unanimidad en la decisión, por lo que fue tomada por la Presidenta de la Comisión Local. También se desprende de estos documentos que la Presidenta de la Comisión Local no consignó los hechos y las razones que motivaron la orden de exclusión.

5. El Artículo 2.016, según enmendado por la Ley Núm. 105 del 3 de julio de 2008, 16 L.P.R.A. see. 3066, dispone que “[n]o se autorizará la inscripción, transferencia o reubicación de ningún elector potencial para una elección desde los cincuenta (50) días, previos a las elecciones”. En el Calendario Electoral dicha fecha límite fue el 15 de septiembre de 2008.

6. La Sesión 2.12 del Reglamento dispone que el "Edicto Sobre Recusación de Electores por Motivo de Domicilio y Otras Causales”, entre otras cosas "[d]eberá aparecer en letra negrilla, tamaño diez (10) puntos, toda primera mención de persona natural o jurídica que se mencione en el mismo.

7. Es principio reiterado de derecho administrativo que una vez una agencia adopta una norma administrativa, debe cumplirla y aplicarla de la manera en que está concebida, sirviendo siempre los propósitos, objetivos y política pública que la forjaron. Hernández v. Centro Unido, 168 D.P.R. _ (2006), 2006 J.T.S. 140.

8. El Artículo 1.023 de la Ley Electoral, 16 L.P.R.A., see. 3029, dispone: “los acuerdos de las Comisiones Locales... deberán ser aprobados por unanimidad de los votos de los miembros que estuvieren presentes al momento de la votación. Cualquier cuestión sometida a la consideración de ésta que no recibiere tal unanimidad de votos, será decidida en pro o en contra, por el Presidente de la misma, siendo ésta la única ocasión o circunstancia en la que dicho Presidente podrá votar.

9. No surge de las resoluciones recurridas ni del expediente ante nuestra consideración que el TPI haya celebrado la vista (de novo) en su fondo que exige el Artículo 1.016 de la Ley Electoral, 16 L.P.R.A. sec. 3016a.